# NOTE



April 6th, 2012          PITTSBURGH                                          PENNSYLVANIA
[Date]                   [City]                                              [State]

102 ETHAN HILL DRIVE   HARRISVILLE, PA 16038

[Property Address]

1. **BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 177,550.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Howard Hanna Mortgage Services, a Pennsylvania Corporation

   I will make all payments under this Note in the form of cash, check or money order.
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     3.750      %.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**
   (A) Time and Place of Payments
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the  1st      day of each month beginning on   June 1st    ,
   2012      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on May 1st, 2042       ,
   I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at  119 Gamma Dr, Pittsburgh, PA 15238
                                                               or at a different place if required by the Note Holder.

   (B) Amount of Monthly Payments
   My monthly payment will be in the amount of U.S. $  822.26       .

4. **BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. **LOAN CHARGES**
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**
   (A) Late Charge for Overdue Payments
   If the Note Holder has not received the full amount of any monthly payment by the end of   15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   4.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
   (B) Default
   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   (C) Notice of Default
   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
   (D) No Waiver By Note Holder
   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

MULTISTATE FIXED RATE NOTE — Single Family -- Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT    Form 3200 1/01
G3200-01  (0008)

Initials: _SS_

EXHIBIT A

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
SCOTT STREIT                                                -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)
[stamp: Pay to the Order of: Without Recourse JPMorgan Chase Bank, N.A. By: Alisha Benson / Asst Secretary]   -Borrower

_____ (Seal)
[stamp: see attached]                                       -Borrower

*[Sign Original Only]*

ORIGINAL



# ALLONGE

| | |
|---|---|
| **MORTGAGOR:** | SCOTT STREIT |
| **ADDRESS OF MORTGAGOR:** | 102 ETHAN HILL DRIVE<br>HARRISVILLE, PA 16038 |
| **MORTGAGE AMOUNT:** | $ 177,550.00 |
| **NOTE DATE:** | 04/06/2012 |

**WITHOUT RECOURSE PAY TO THE ORDER OF:**

JPMORGAN CHASE BANK, N.A.
Its Assigns and/or Successors

**HOWARD HANNA MORTGAGE SERVICES**
A Pennsylvania Corporation

By: _____
Kevin J Laird
Vice President

Form RD 1980-17  
(Rev. 02-12)  
Page 1 of 2

UNITED STATES DEPARTMENT OF AGRICULTURE  
RURAL DEVELOPMENT/  
RURAL HOUSING SERVICE

Form Approved  
OMB No. 0575-0078

| | |
|---|---|
| | State<br>PENNSYLVANIA |
| | County<br>BUTLER |
| | Date of Note<br>04-06-2012 |

## LOAN NOTE GUARANTEE

| Borrower Name<br>SCOTT  STREIT | RHS Case No. (State, County, SSN) |
|---|---|

| Lender<br>HOWARD HANNA FINANCIAL SERVICES, INC | |
|---|---|
| Lender's Address    119 GAMMA DRIVE<br>                  PITTSBURGH, PA 15238-2919 | Principal Amount of Loan<br>$ 177,550.00 |

This Loan Note Guarantee is issued under Lender Agreement for Guaranteed Single Family Housing Loans dated 01-16-1997 in connection with the above identified loan.

In consideration of the making of the subject loan by the Lender, the United States of America, acting through the Rural Housing Service of the Rural Development mission area (herein called "RHS"), pursuant to Title V of the Housing Act of 1949 (42 U.S.C. 1471 et. ), agrees that, subject to the terms and conditions herein, it will pay to the Lender the lesser of

1. Any loss of an amount equal to 90 percent of the principal amount actually advanced to the Borrower, or
2. Any loss sustained by the lender of an amount up to 35 percent of the principal amount actually advanced to the Borrower, plus 85 percent of any additional loss sustained by the Lender of an amount up to the remaining 65 percent the principal amount actually advanced to the Borrower.

Loss includes only (a) principal and interest evidenced by the Note; (b) any loan subsidy due and owing; and (c) any principal and interest indebtedness on RHS approved protective advances for protection and preservation of collateral. Interest (including any subsidy) shall be covered by the Loan Note Guarantee to the date of the final loss settlement when the Lender conducts liquidation of collateral in an expeditious manner. Net proceeds received from liquidation of the collateral will be used in calculating the amount of loss sustained by the Lender. If the Lender acquires the collateral, the net proceeds from collateral for calculating loss shall be determined by RHS as follows: (i) the collateral will be appraised at its current market value as of the date of acquisition by the Lender then (ii) deduct from such appraised value an estimate of liquidation cost which will include an allowance for the estimated time the property will be held by the Lender.

If RHS conducts the liquidation of the loan, loss occasioned to a Lender by accruing interest after the date RHS accepts responsibility for the liquidation will not be covered by the Loan Note Guarantee.

Lender may sell the guaranteed loan only to a Lender which meets the qualifications and in the manner as provided in Subpart D, 7 CFR 1980. Such loan must not be in default at the time of the sale.

Lender may obtain participation in its loan under its procedures. Participation means a sale of an interest in the loan wherein the Lender retains the note, collateral securing the note, and all responsibility for all loan servicing and liquidation. A participant has no rights under this instrument.

## CONDITIONS OF THE GUARANTEE

1. **Loan Servicing**
Lender will be responsible for servicing the entire loan and Lender will remain mortgagee and/or secured party of record. The Lender may sell the servicing rights to an RHS eligible Lender when the purchasing Lender agrees to be bound by all of the same terms as the selling Lender and this agreement and the RHS Lender Agreement for Guaranteed Single Family Housing Loans.

2. **Full Faith and Credit**
The Loan Note Guarantee constitutes an obligation supported by full faith and credit of the United States and is incontestable except for fraud or misrepresentation of which the lender has actual knowledge at the time it becomes such lender or which the lender participates in or condones. A note which provides for the payment of interest on interest shall not be guaranteed. If the note to which this instrument is attached or relates provides for the payment of interest on interest, then this Loan Note Guarantee is void. In addition, the Loan Note Guarantee will be unenforceable by the lender to the extent any loss is occasioned by violation of usury laws, negligent servicing, or failure to obtain the required security regardless of the time at which RHS acquires knowledge of the forgoing. Any losses

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0078. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

Page 2 of 2 - Borrower Name: SCOTT STREIT

occasioned will be unenforceable by the lender to the extent that loan funds are used for purposes other than those approved by RHS in its Form RD 1980-18, "Conditional Commitment for Single Family Housing Loan Guarantee." Negligent servicing is defined as the failure to perform those services which a reasonably prudent lender would perform in servicing its own loan portfolio of loans that are not guaranteed. The term includes not only the concept of a failure to act but also not acting in a timely manner or acting contrary to the manner in which a reasonably prudent lender would act up to the time of loan maturity or until a final loss is paid. If RHS determines that a Lender did not originate a loan in accordance within the requirements in 7 CFR part 1980, subpart D, and RHS pays a claim under the loan guarantee, RHS may revoke the Lenders' eligibility status in accordance with Section 1980.309(h) and may also require the Lender: (1) To indemnify RHS for the loss, if the payment under guarantee was made within 24 months of loan closing; or (2) To indemnify RHS for the loss, regardless of how long ago the loan closed, if RHS determines that fraud or misrepresentation was involved in connection with the origination of the loan.

3. Lender will receive all payments of principal and interest, annual fee, and any loan subsidy on the account of the entire loan.

4. The Loan Note Guarantee is subject to an annual fee billed to the Lender and collected by the Agency on an annual basis pursuant to 42 U.S.C. 1472 (h) 8, 7 CFR part 1980, subpart D, and RHS procedures. The annual fee is calculated each year at __0.3__ % of the unpaid principal balance. The annual fee for the first year is calculated when the loan is closed based upon the loan amount. Thereafter, the annual fee is calculated every 12 months based upon the average scheduled amortized unpaid principal balance. Billing for the annual fee will begin 12 months from the closing of the loan. The annual fee is subject to a 4% late charge.

5. Protective Advances made by the Lender pursuant to RHS regulations will be guaranteed against a percentage of the loss to the same extent as provided in the Loan Note Guarantee.

6. The Loan Note Guarantee will terminate automatically (a) upon full payment of the guaranteed loan; or (b) upon full payment of any loss obligation hereunder; or (c) upon written notice from the Lender to RHS that the guarantee will terminate provided this Loan Note Guarantee is returned to be canceled by RHS.

7. Any amount due under this instrument will be determined and paid, as provided in 7 CFR part 1980, subpart D in effect on the date of this instrument.

8. All notices and actions will be initiated through RHS __HARRISBURG__ for __PENNSYLVANIA__ (State) at the following mailing address:

USDA Rural Development
One Credit Union Plc Ste330
Harrisburg, PA 17110-2996

UNITED STATES OF AMERICA
RURAL DEVELOPMENT
RURAL HOUSING SERVICE

By: Robin Lane   *Jeremy D. Wilson*

Title: Area Specialist

Date: 06-08-2012

Assumption Agreement by: _____ Dated: _____
(Transferee)

Assumption Approved by RHS: _____ Dated: _____
(new note, if taken, is attached)

Assumption Agreement by: _____ Dated: _____
(Transferee)

Assumption Approved by RHS: _____ Dated: _____
(new note, if taken, is attached)